IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:20-cv-00043-MR

STEVE LEE WALDEN MENIUS, )
)
Plaintiff, )
)
vs. )
)
GASTON COUNTY DEPARTMENT )
OF SOCIAL SERVICES, et al., ) **ORDER**
)
Defendants. )
_____ )

**THIS MATTER** is before the Court on initial review of the Second Amended Complaint [Doc. 27].[1] Also pending is Plaintiff's *pro se* Letter [Doc. 26], which was docketed as a Motion for Extension of Time to Amend the Complaint, and Plaintiff's Motion to Appoint Counsel [Doc. 28]. Plaintiff is proceeding *in forma pauperis*. [Doc. 18].

**I. BACKGROUND**

*Pro se* Plaintiff, who is presently incarcerated at the Harnett Correctional Institution,[2] filed this civil rights action pursuant to 42 U.S.C. §

---

[1] The Second Amended Complaint was filed before the Complaint [Doc. 1] and the Amended Complaint [Doc. 25] were reviewed for frivolity.

[2] Plaintiff filed the Complaint from the Gaston County Jail.

1983; the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*; the Religious Land Use and Incarcerated Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, *et seq.*; and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, *et seq.*

Plaintiff purports to bring this action on behalf of himself, "all persons suffering from addiction, mental defect, and personality disorders," and "all Christians." [Doc. 27 at 12]. Plaintiff names as Defendants: Gaston County; the City of Gastonia; Gaston County Department of Social Services; the City of Hartsville, South Carolina; the Hartsville Department of Social Services; the City of Darlington, South Carolina; Darlington County; the estate of E. Flynn Menius, Jr., Plaintiff's adoptive father; Gordon McBride, an attorney who served as Defendant Menius's adoption lawyer, a prosecutor, and Plaintiff's criminal defense lawyer; Jim Cox, a criminal attorney; Michael Freidman, a South Carolina forensic psychologist; the Boy Scouts of America; and "Corporations both State and local municipal authorities and companies with rights and liabilities of persons." [Doc. 27 at 1-3, 12].

Plaintiff alleges that he was adopted by Defendant Menius at the age of 10[3] after the Boy Scouts of America recognized Defendant Menius as a

---

[3] Plaintiff is now 44 years old.

pedophile but failed to prosecute him.[4]  Plaintiff alleges that Defendant Menius molested him which caused him "permanent disability," i.e., mental illness,[5] drug abuse, and crime, which led to his habitual felon status in North Carolina. [Doc. 27 at 4-5]. This, Plaintiff claims, resulted in a cycle of criminality and incarceration and exposed him to dangerous conditions both inside and outside of prison.

Plaintiff alleges that Defendant Menius hired Defendant McBride, who attended the same church as Menius, to handle Plaintiff's adoption. Plaintiff alleges that "someone was responsible" for allowing Defendant Menius, to adopt Plaintiff out of state custody[6] without a proper background check. [Doc. 27 at 14]. Plaintiff alleges that the City of Hartsville "harbored a pedophile" who lived and worked there, adopted several boys, and volunteered with the Boy Scouts. [Doc. 27 at 14]. Plaintiff "assumes that someone in the local social services office in Hartsville also had a duty to do

---

[4] Plaintiff has filed documents purporting to relate to the Boy Scouts of America's finding that Defendant Menius engaged in "acts of perversion" with five boys, which resulted in his removal as a Scoutmaster in 1964. [Doc. 27 at 21-22]; [Doc. 29].

[5] Plaintiff appears to allege that he was diagnosed with antisocial personality disorder in connection with a criminal prosecution in 2007. [Doc. 27 at 4].

[6] Plaintiff alleges that he had been placed at Stonewall Jackson school in Gaston County at the time of the adoption.

3

a background check" on Defendant Menius when he moved to Hartsville from North Carolina. [Doc. 27 at 14].

Plaintiff further alleges that, years after the adoption, Defendant McBride served as the Solicitor for Darlington County, South Carolina, where Plaintiff was prosecuted in several criminal cases. Plaintiff alleges that, in 2007, Defendant Menius hired Defendant McBride as defense counsel to represent Plaintiff in a 2007 criminal case, which deprived Plaintiff of due process and was a conflict of interest. [Doc. 27 at 14-15]. Plaintiff alleges that Defendant McBride "vindictively prosecuted" Plaintiff after Plaintiff told a state forensic psychologist about the molestation. [Doc. 27 at 15]. Plaintiff alleges that Defendant Cox, a South Carolina criminal defense attorney, worked in conjunction with Defendant McBride and Defendant Menius to deprive Plaintiff of due process in the 2007 criminal case which "effectively ruin[ed] Plaintiff's life and set[] him up for habitual offender status in the State of North Carolina." [Doc. 27 at 15]. Plaintiff appears to allege that Defendant Freidman, a forensic psychologist, testified against Plaintiff in the 2007 criminal proceeding and that this constituted deliberate indifference in violation of Plaintiff's Eighth Amendment rights. [Doc. 27 at 16-17].

Plaintiff alleges that he did not receive any of the assets from Defendant Menius' estate upon his death even though Defendant Menius

caused Plaintiff's personality disorder, antisocial behavior, and a lifetime of incarceration.

Plaintiff further alleges that municipal authorities in North Carolina and South Carolina deprived Plaintiff of due process "e.g., the ability to defend himself by being discriminated against due to a preexisting mental defect…" caused by Defendant Menius' molestation. [Doc. 27 at 17]. He also argues that he has been deprived of equal protection "leading to a deliberate indifference of resulting prison conditions leading to Eight Amendment violations, gangs, overcrowding" and that his incarceration infringes on his "Christian liberty." [Doc. 27 at 18].

As injury, Plaintiff alleges that he was sentenced to 15 years' imprisonment in 2007; was "lynched" by five gang members in the South Carolina Department of Corrections; and was found to be a habitual felon in North Carolina. [Doc. 27 at 5]. Plaintiff seeks injunctive relief and damages for himself and others caused by "convicting people for crimes committed because of mental defects caused by the states' business ethics…." [Doc. 27 at 5].

## II.  STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the Amended Complaint to determine whether it is subject to

dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether the Second Amended Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

As a preliminary matter, Plaintiff attempts to present claims on behalf of others. However, his status as a *pro se* prisoner precludes him from making claims on behalf of others. See Hummer v. Dalton, 657 F.2d 621, 635-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975) ("it is plain error to permit

[an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."). Therefore, to the extent the Second Amended Complaint seeks relief on behalf of individuals other than the Plaintiff, these claims are dismissed.

Plaintiff purports to assert claims based on a disability pursuant to the ADA. To state a claim under the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. See Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999). Plaintiff appears to assert that he has a psychological condition which has resulted in drug abuse and a cycle of criminal conduct and incarceration. Assuming *arguendo* that Plaintiff's psychological condition constitutes a disability, he has failed to state a claim under either the ADA. Plaintiff does not allege any facts demonstrating that he was denied a benefit or service or was otherwise discriminated against based on a disability. Rather, Plaintiff admits that his convictions resulted from drug abuse and criminal conduct. See generally Bates ex rel. Johns v. Chesterfield Cnty, Va., 216 F.3d 367 (4th Cir. 2000) (finding no ADA violation where the stop, use of force, and arrest of an autistic teenager were not by

7

reason of his disability, but because of his objectively verifiable misconduct). Accordingly, Plaintiff's ADA claims will be dismissed for failure to state a claim upon which relief can be granted.

Plaintiff purports to assert religion-based claims pursuant to RFRA and RLUIPA. As a preliminary matter, Plaintiff's RFRA claim will be dismissed for failure to state a claim upon which relief can be granted because Plaintiff has failed to name any federal defendant in this action. See 42 U.S.C. § 2000bb-1(c) (permitting a plaintiff to assert a violation of the statute as "a claim or defense in a judicial proceeding and obtain relief against a government"); 42 U.S.C. § 2000bb-2(1) (defining "government" to include "a branch, department, agency, instrumentality, and official (or other person acting under the color of law) of the United States.")). As for Plaintiff's claims under RLUIPA, that Act applies to state and local actions that substantially burden a sincerely held religious belief. See Greenhill v. Clarke, 944 F.3d 243 (4th Cir. 2019); Incumaa v. Stirling, 791 F.3d 517, 525 (4th Cir. 2015). Plaintiff appears to assert that the molestation he allegedly endured as a child rendered him unable to function in secular society and that his conviction and incarceration in criminal law system are contrary to Christian liberty. Plaintiff's conclusory allegations fail to demonstrate that he has a sincerely held religious belief that has been substantially burdened by any

named Defendant.  Further, his attempts to invalidate his criminal convictions and incarceration by characterizing them as pagan and violative of his secular rights are baseless, fantastical, and delusional.  Plaintiff's RFRA and RLUIPA claims will therefore be dismissed as frivolous and for failure to state a claim upon which relief can be granted.

Finally, Plaintiff asserts various violations of his constitutional rights pursuant to § 1983.  To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  To satisfy the state action requirement, a plaintiff must demonstrate that the conduct at issue is "fairly attributable to the State."  Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).  If the defendant is not a state actor, there must be a "sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions."  DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999).

Among the Defendants in this action are Plaintiff's adoptive father's estate, two attorneys, and the Boy Scouts of America.  Plaintiff makes no factual allegations that would demonstrate that any of these Defendants acted under the color of state law at the time the alleged incidents occurred.

9

Case 3:20-cv-00043-MR   Document 30   Filed 12/21/20   Page 9 of 19

See generally Fleming v. Asbill, 42 F.3d 886, 890 (4th Cir. 1994) ("Private lawyers do not act 'under the color of state law' merely by making use of the state's court system."); Powell v. Shopco Laurel Co., 678 F.2d 504 (4th Cir. 1982) (dismissing § 1983 claim against the private employer of a state-licensed security guard where the liability was predicated solely on respondeat superior). Nor does Plaintiff explain how Defendants McBride and Cox acted under the color of state law by serving as attorneys when Plaintiff was criminally prosecuted.[7] See generally Polk County v. Dodson, 454 U.S. 312, 325 (1981) ("a public defender does not act under the color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."). Therefore, the § 1983 claims against Defendants Menius, McBride, Cox and the Boy Scouts of America[8] will be dismissed.

Plaintiff also attempts to state a claim against Defendant Freidman, a forensic psychologist, in connection with his testimony in Plaintiff's 2007

---

[7] To the extent that Plaintiff alleges any wrongdoing by Defendant McBride in his role as a prosecutor, Plaintiff has failed to provide any factual support for such a claim. Moreover, such a claim would be barred by prosecutorial immunity. See generally Imbler v. Pachtman, 424 U.S. 409, 418 (1976) (prosecutors are absolutely immune as individuals from Section 1983 liability for acts arising out of the exercise of their official functions).

[8] The Court takes judicial notice that the Boy Scouts of America have filed for bankruptcy and the bar date for proofs of claim has passed. This would also bar any claim Plaintiff may have had against the Boy Scouts of America.

criminal case. The allegations are too vague and conclusory to discern how Defendant Freidman is alleged to have violated Plaintiff's rights. Moreover, any such claim appears to be barred by absolute witness immunity. See generally Briscoe v. LaHue, 460 U.S. 325, 335 (1983). Accordingly, Plaintiff's claims against Defendant Freidman are dismissed.

Plaintiff asserts a number of § 1983 claims against the Defendant counties, cities, and departments of social services. A county or municipality may not be found liable under § 1983 via *respondeat superior* alone; it may only be found liable "when execution of a government's policy or custom, whether made by its lawmakers or by those edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). For § 1983 liability to extend to a local government, the policy or custom must be the "moving force" that resulted in the constitutional violation. Monell, 436 U.S. at 694. It appears that Plaintiff seeks to impose § 1983 liability on the municipal Defendants based on their alleged failure to conduct an adequate background check on Defendant Menius before he was allowed to adopt Plaintiff. However, this claim appears to be based on a theory of *respondeat superior* rather than on any policy or custom, and therefore, the claims against these Defendants are

subject to dismissal for failure to state a claim upon which relief can be granted.

It further appears that all of Plaintiff's § 1983 claims are barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). In <u>Heck</u>, the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. <u>A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983</u>. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

<u>Id.</u> at 485-87 (footnotes omitted; emphasis added).

Plaintiff describes his § 1983 claims as "Access to Court," "14th Amendment Deliberate Indifference," "First Amendment," and "normal existence equal protection under the law." [Doc. 25 at 3, 5]. Plaintiff argues *inter alia* that his criminal acts were caused by molestation that he suffered

12

Case 3:20-cv-00043-MR   Document 30   Filed 12/21/20   Page 12 of 19

as a pre-teen; that his prosecutions were unfair and at least one guilty plea was coerced; that his convictions and incarceration violate his Christian rights; and that his incarceration is a result of Defendants' wrongful actions. Plaintiff's success on these claims would necessarily imply the invalidity of his convictions in the underlying criminal matters. See Lewis v. Casey, 518 U.S. 343, 353 (1996) (to satisfy the injury requirement of an access to courts claim, the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded). Plaintiff is now in the custody of the North Carolina Department of Public Safety and has not alleged that any conviction has been reversed or otherwise invalidated. Therefore, Plaintiff's § 1983 claims appear to be barred by Heck.

Even if there were a Defendant against whom Plaintiff could assert any § 1983 claims, Plaintiff has failed to plausibly state a claim for § 1983 relief. Plaintiff appears to assert a free exercise of religion claim under § 1983. To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. C.I.R., 490 U.S. 680, 699 (1989). Plaintiff does not allege that he has a sincerely held religious belief or that such belief was substantially burdened by an official action or regulation. Moreover, Plaintiff's First

13

Amendment claim is frivolous and fails to state a claim under § 1983 for the same reasons that his RLUIPA claims were dismissed, *supra*.

Further, Plaintiff has failed stated a plausible claim for the denial of access to the courts. Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); see Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a claim for denial of access to the courts, the inmate cannot rely on conclusory allegations, rather, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by just any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

It appears that Plaintiff is attempting to state an equal protection claim. The equal protection requirement "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger

14

Case 3:20-cv-00043-MR   Document 30   Filed 12/21/20   Page 14 of 19

v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Plaintiff's conclusory reference to equal protection is unsupported by any factual allegations whatsoever. He has failed to allege that any Defendant has treated him differently from others who are similarly situated or that this unequal treatment was the result of purposeful or intentional discrimination. Therefore, to the extent that Plaintiff has attempted to state an equal protection claim, it will be dismissed for failure to state a claim upon which relief can be granted.

Plaintiff also alleges that Defendants violated his Eighth Amendment rights. Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment.[9] See Pressly v. Hutto, 816 F.2d 977,

---

[9] Plaintiff cites the Fourteenth Amendment in relation to his deliberate indifference claim, which governs the deliberate indifference claims of pretrial detainees. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983); see also Martin v. Gentile, 849 F.2d 863 (4th Cir. 1988) (applying the Fourteenth Amendment to an arrestee's deliberate indifference claim). However, the Fourth Circuit has long applied the Eighth Amendment deliberate indifference standard to pretrial detainees' deliberate indifference claims. See, e.g., Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990); Martin, 849 F.3d at 863. In Kingsley v. Hendrickson, 576 U.S. 389 (2015), the Supreme Court

15

Case 3:20-cv-00043-MR   Document 30   Filed 12/21/20   Page 15 of 19

979 (4th Cir.1987). To establish deliberate indifference, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). Plaintiff makes conclusory references to dangers that he has faced both inside and outside of prison. However, he fails to explain how a Defendant was deliberately indifferent to his health or safety in any way. Nor does he explain how any of the Defendants were involved in, or had any control over, the conditions of his incarceration whatsoever. Therefore, Plaintiff's deliberate indifference claim is insufficient and will be dismissed for failure to state a claim upon which relief can be granted.

---

held that the test for excessive force claims brought by pretrial detainees under the Fourteenth Amendment differs from the test for excessive force claims brought by convicted prisoners under the Eighth Amendment. Some circuits have held, in light of Kingsley, that an objective reasonableness standard should apply in custodial contexts besides excessive force including medical claims. See, e.g., Hardeman v. Curran, 933 F.3d 816 (7th Cir. 2019) (extending the objective standard to conditions of confinement cases); Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017) (extending objective standard to conditions of confinement cases); Castro v. City of Los Angeles, 833 F.3d 1060, 1069-70 (9th Cir. 2016 (*en banc*) (extending the objective standard to failure to protect claims). The Fourth Circuit has not yet addressed this question. See, e.g., Duff v. Potter, 665 F. App'x 242, 244-45 (4th Cir. 2016) (applying the Kingsley standard to a detainee's excessive force claim but declining to disturb the district court's ruling on plaintiff's claim of deliberate indifference to a serious medical need for procedural reasons). However, the case law applying the deliberate indifference standard to such claims has not been overruled and the Fourth Circuit has not expressed any intention to do so. See, e.g., Shover v. Chestnut, 798 F. App'x 760, 761–62 (4th Cir. 2020) (applying the deliberate indifference standard to a pretrial detainee's claim regarding a serious medical need without discussing Kingsley); Krell v. Braightmeyer, 828 F. App'x 155 (4th Cir. 2020) (same).

16

Plaintiff has failed to state any plausible claim and, therefore, the Second Amended Complaint will be dismissed as frivolous and for failure to state a claim upon which relief can be granted.

In his Motion for Extension of Time to Amend [Doc. 26], Plaintiff requests an unspecified amount of time to amend the Complaint. This Motion is denied as moot as the Second Amended Complaint has now been filed.

In his Motion to Appoint Counsel [Doc. 28], Plaintiff states that he is unable to afford counsel and North Carolina Prisoner Legal Services declined his case; his imprisonment greatly limits his ability to litigate this case; the North Carolina Department of Corrections does not have law libraries in violation of his rights to due process and to access the courts; the case is complex and requires significant research and investigation; a trial would likely involve conflicting testimony and cross-examination that would require counsel; and Plaintiff has made repeated attempts to obtain a lawyer.

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Plaintiff has failed to

17

demonstrate the existence of exceptional circumstances that would warrant the appointment of counsel and this Motion is, therefore, denied.

## IV. CONCLUSION

In sum, the Second Amended Complaint will be dismissed as frivolous and for failure to state a claim upon which relief can be granted. The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to show how Heck does not apply and to otherwise properly state a claim upon which relief can be granted.[10] Should Plaintiff fail to timely file a Third Amended Complaint in accordance with this Order, this action will be dismissed without prejudice and without further notice to Plaintiff.

**IT IS, THEREFORE, ORDERED** that:

(1) Plaintiff's Second Amended Complaint is dismissed without prejudice as frivolous and for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii);

(2) Plaintiff's *pro se* Letter [Doc. 26] is construed as a Motion for Extension of Time to Amend the Complaint and is **DENIED** as moot;

(3) Plaintiff's Motion to Appoint Counsel [Doc. 28] is **DENIED**; and

---

[10] Plaintiff should also demonstrate why his claims, many of which address incidents that allegedly occurred decades ago, should be considered timely.

(4) Plaintiff shall have thirty (30) days in which to file a Third Amended Complaint in accordance with the terms of this Order. If Plaintiff fails to timely amend in accordance with this Order and within the time limit set by the Court, this action will be dismissed without prejudice and without further notice to Plaintiff.

The Clerk is instructed to mail Plaintiff a blank prisoner § 1983 complaint form.

**IT IS SO ORDERED.**

Signed: December 21, 2020

Martin Reidinger
Chief United States District Judge

19

Case 3:20-cv-00043-MR   Document 30   Filed 12/21/20   Page 19 of 19